*Margin note: SAUNDERS v. CARROLL.*

---

## D. F. LOWBER *v.* T. J. McCOY.

The lack of full and explicit pleadings, will not compel the rejection of pertinent evidence, the existence of which was previously known to the party objecting to its introduction.

By a contract made in Alabama and which was not recorded in Louisiana, defendant put it in the power of *W.* so to act, that an innocent purchaser in Louisiana might be deceived and defrauded. Plaintiff was deceived and purchased in good faith a slave, which the defendant, without plaintiff's consent, afterwards got possession of and carried away—defendant was condemned to return the slave or to pay his value in damages.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *Clarke & Bayne*, for plaintiff. *Benjamin, Bradford & Finney*, for defendant and appellant.

SPOFFORD, J. There is but one bill of exceptions in the record. It was taken to the admission in evidence of a notarial act of sale passed in New Orleans, from *Jacob B. Walker* (the original owner of the slave in controversy) to *Stephen Truslues*, the vendor of the plaintiff *Lowber*. The objection is based upon the ground that no such title had been set forth in the plaintiff's pleadings.

Whatever difficulty this question might have presented under other circumstances, appears to be removed by a portion of the evidence which has been

received without objection.  The object of pleading is to notify the adverse party of the nature of the claim or defence, that he may be prepared to rebut it and not be surprised on the trial.   On various occasions, this court has held, that if the record discloses notice previously brought home to the party so that it was impossible for him to have been surprised, the lack of more full and explicit pleadings will not compel the rejection of pertinent evidence, the existence of which was previously known to the party objecting to its introduction.

In this case, it appears from a letter written by the defendant to the plaintiff before the institution of this suit, that he was apprised of the fact that the plaintiff derived his title from *Walker*, and that the validity of this title was to be tested by a lawsuit.  *Lowber* was in possession of the slave for many months under a title in the State of Louisiana.  *McCoy* wishing to avail himself of the supposed advantages of possession and perhaps of an Alabama forum, took the slave away from Louisiana without the consent or knowledge of *Lowber*.  He then wrote *Lowber* the letter above referred to ; it is in these words :

"When I saw you yesterday, I told you that I would not take *James*, but afterwards I consulted a lawyer and he advised me to a different course, so I took him away peaceably.   Now all I want is to try who owns him, and I say I do, but the court will determine that; if he is not mine, I have nothing more to say, but I know I paid for him fourteen months ago, *a long time before Mr. Walker disposed of him in New Orleans.*"

It thus appears that the defendant was aware that both parties were to claim under *Walker*, the common vendor, and that the question to be litigated was, which of *Walker's* deeds conferred the better right.   Accordingly we find him in his answer, charging the defendant *Lowber* and his immediate vendor, *Truslues*, with acquiring their pretended rights to the slave *James*, in bad faith and with notice of the transfer from *Walker* to himself.

We are of opinion that the defendant should derive no benefit from his act of removing the slave without leave from this State, and from the control of the party who had a lawful possession under title.

The sole question is, can the title of *McCoy* under *Walker* prevail over that of *Lowber* under *Walker* ?   There is written and oral evidence unobjected to, of a power from *Walker* to *Rowley* to sell his slaves then in the possession of *Rowley*, among which it is established that the slave *James* was included.  The acts of sale from *Walker* to *Truslues* and from *Truslues* to *Lowber*, are translative of property, and it is proven that possession followed both acts, so that there was a continuous adverse possession in the plaintiff and his vendor as against *Walker* and *McCoy*, from the 27th of May, 1853, the date of the sale from *Walker* to *Truslues*, up to the 19th of May, 1854, when *McCoy*, who never had possession before, carried off the slave without leave, and against his promise to *Lowber*.

*McCoy* claims under an act executed in Alabama, on the 17th of March, 1853, by *Walker* to himself, purporting to be a sale of several slaves, (including the boy *James*,) with the condition "that the possession of the said slaves should remain with the said *Walker* for the space of twelve months."   The evidence shows that this was really a conditional sale, amounting to a species of mortgage for an antecedent debt, as one of the . attesting witnesses deposed that the slave *James* was, at the date of this act, in New Orleans, and that there

was an agreement at the time, that if the amount of the debt was not paid in twelve months, the slaves were to be given up to *McCoy.*

By this peculiar contract, (which has never been of record in Louisiana, although recorded in Mobile on the 20th of April, 1853,) the defendant put it in the power of *Walker* so to act, that an innocent purchaser in Louisiana might be deceived and defrauded. *Lowber* purchased in good faith and without notice a slave, to which his vendor in Louisiana exhibited a complete title from one who is conceded to have been the original owner in Alabama. Can such a vendee or mortgagee as *McCoy,* who, in contracting for his own security, assented to a clause giving the control of the slave for twelve months, in Louisiana, to his vendor or mortgagor, oust an innocent purchaser, like *Lowber,* who bought her, within the twelve months, and received possession under a chain of title from *Walker,* without any notice of the legal or equitable claims of *McCoy* in Alabama?

The defendant's allegation that *Lowber* had notice of his claims, is unsupported by evidence.

On account of the usurpation of possession of *McCoy,* and his removal of the slave from this State under the circumstances disclosed, he cannot shelter himself from responsibility by pleading the non-registry of the private acts of sale from *Truslues* to *Lowber.* He has no title himself recorded in Louisiana, and he knew that *Lowber* was in possession under title. His own acts led to the deception of *Lowber,* and he cannot be permitted to profit by his wrong.

The judgment is in the alternative for the restitution of the slave, or damages to the extent of his value with hire. We think the damages should not be reduced.

Judgment affirmed.